UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

CINDY MCCARTY,

                              Plaintiff,

v.                                                              5:05-CV-953
                                                                 (LEK/GHL)

MICHAEL J. ASTRUE, Commissioner of
Social Security,[1]

                              Defendant.
_____

APPEARANCES:                                         OF COUNSEL:

OLINSKY, SHURTLIFF LAW FIRM             JAYA SHURTLIFF, ESQ.
*Counsel for Plaintiff*
300 S. State Street
5th Floor
Syracuse, New York 13202

HON. GLENN T. SUDDABY                        WILLIAM H. PEASE, ESQ.
United States Attorney for the                       Assistant United States Attorney
 Northern District of New York
*Counsel for Defendant*
100 South Clinton Street
Syracuse, New York 13261-7198

GEORGE H. LOWE, United States Magistrate Judge

## REPORT AND RECOMMENDATION

      This matter was referred to the undersigned for report and recommendation by the Honorable Lawrence E. Kahn, Senior United States District Judge, pursuant to 28 U.S.C. § 636(b) and Northern District of New York Local Rule 72.3.  This case has proceeded in accordance with General Order 18 of this Court, which sets forth the procedures to be followed when appealing a denial of Social Security benefits.  Both parties have filed briefs.  Oral

---

[1] Michael J. Astrue became Commissioner of Social Security on February 12, 2007.  Pursuant to Federal Rule of Civil Procedure 25(d)(1), Michael J. Astrue is substituted as the Defendant in this suit for Jo Anne B. Barnhart.

argument was not heard. Because I find that the Administrative Law Judge ("ALJ") erroneously rejected the opinion of Plaintiff's treating physician and did not sufficiently explain his analysis of Plaintiff's credibility, I recommend that the matter be remanded for further proceedings.

## I.     BACKGROUND

### A.     Procedural History

Plaintiff filed applications for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI") on August 1, 2004. (Administrative Transcript ("T") at 67, Dkt. No. 5) The applications were denied initially. (T. at 33-38.) Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which was held on March 2, 2005. (T. at 307-36.) On March 31, 2005, the ALJ issued a decision finding that Plaintiff was not disabled. (T. at 16-26.)

Plaintiff appealed to the Appeals Council, and the ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review on June 16, 2005. (T. at 5-8.) Plaintiff commenced this action on July 28, 2005. (Dkt. No. 1.)

### B.     The Contentions

Plaintiff makes the following claims:

(1)     The Commissioner erred in failing to give controlling weight to the opinion of a treating source. (Dkt. No. 8 at 11-15.)

(2)     The Commissioner erred in determining that the Plaintiff was capable of light work. (Dkt. No. 8 at 15-18.)

(3)     The Commissioner erred in finding that the Plaintiff's subjective complaints were not totally credible. (Dkt. No. 8 at 17-18.)

(4)     The Commissioner erred in determining that jobs existed in sufficient numbers in

the national and regional economy that the Plaintiff could perform.  (Dkt. No. 8 at 18-20.)

Defendant contends that the ALJ's decision is supported by substantial evidence and thus should be affirmed.  (Dkt. No. 9.)

## II.    APPLICABLE LAW

### A.    Standard for Benefits

To be considered disabled, a plaintiff seeking disability insurance benefits or supplemental security income benefits must establish that he is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A) (2004).  In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B) (2004).

Acting pursuant to its statutory rulemaking authority (42 U.S.C. §§ 405(a), 1383(d)(1)), the Social Security Administration ("SSA") has promulgated regulations establishing a five-step sequential evaluation process to determine disability.  20 C.F.R. § 404.1520 (2005).  "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further."  *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).

> At the first step, the agency will find non-disability unless the claimant shows that he is not working at a "substantial gainful activity." [20 C.F.R.] §§ 404.1520(b), 416.920(b). At step two, the SSA will find non-disability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." [20 C.F.R.] §§ 404.1520(c), 416.920(c). At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies. [20 C.F.R. §§] 404.1520(d), 416.920(d). If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled. If the claimant survives the fourth stage, the fifth, and final, step requires the SSA to consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. [20 C.F.R.] §§ 404.1520(f), 404.1560(c), 416.920(f), 416.9630(c).

*Barnhart v. Thomas*, 540 U.S. at 24-25 (footnotes omitted).

The plaintiff-claimant bears the burden of proof regarding the first four steps. *Serrano v. Barnhart*, Civ. No. 02-6372, 2003 WL 22683342, at *11 (S.D.N.Y. Nov. 14, 2003). If the plaintiff-claimant meets his or her burden of proof on all four steps, the burden then shifts to the defendant-Commissioner to prove that the plaintiff-claimant is capable of performing other jobs which exist in significant numbers in the national economy. *Id.* (citing *Barnhart v. Thomas*, 540 U.S. at 25; other citations omitted).

    **B.**    **Scope of Review**

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. *Brown v. Barnhart*, Civ. No. 02-4523, 2003 WL 1888727, at *4 (S.D.N.Y. Apr. 15, 2003);

*Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)). A reviewing court may not affirm an ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence. *Johnson*, 817 F.2d at 986. In addition, an ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision. *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).

A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision. 42 U.S.C. § 405(g) (2005); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991). "Substantial evidence has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Williams on behalf of Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (citations omitted). It must be "more than a scintilla" of evidence scattered throughout the administrative record. *Serrano*, 2003 WL 22683342, at *10; *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197 (1938)). "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258. However, a reviewing court cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972); *see also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

**III.     THE PLAINTIFF**

Plaintiff is 50 years old.  (T. at 72.)  She has a tenth grade education and previously worked as a care giver and home health aide. (T. at 76, 81.)  Plaintiff alleges disability due to fibromyalgia,[2] depression, anxiety, and irritable bowel syndrome ("IBS").  (Dkt. No. 8 at 2.)

**IV.     THE ALJ'S DECISION**

The ALJ found that: (1) Plaintiff had not engaged in any substantial gainful activity since the alleged onset date; (2) Plaintiff has severe fibromyositis, but it does not meet or equal a listed impairment;[3] (3) Plaintiff's allegations of disabling symptoms were not totally credible; (4) Plaintiff had the residual functional capacity ("RFC") to perform a significant range of light work with the added restrictions that she can only occasionally bend, stoop, kneel, crouch, crawl, squat, balance, climb, and grip, she should avoid concentrated exposure to hazardous machinery and unprotected heights, and she has a moderate limitation in her ability to keep up pace for extended periods; (5) Plaintiff could not perform her past relevant work as a home health aide/care giver; and (6) using the Medical-Vocational Guidelines (the "grids") as a framework, along with the testimony of a vocational expert, there were a significant number of jobs in the national economy that Plaintiff could perform, thus she was not disabled.  (T. at 24-25.)

---

[2] Fibromyalgia is "a common nonarticular rheumatic syndrome characterized by myalgia and multiple points of focal muscle tenderness to palpation (trigger points).  Muscle pain is typically aggravated by inactivity or exposure to cold.  This condition is often associated with general symptoms, such as sleep disturbances, fatigue, stiffness, [headaches], and occasionally [depression]." Medical Dictionary Online, *available at* http://www.online-medicaldictionary.org/omd.asp?q=fibromyalgia (citing ADAMS ET AL., PRINCIPLES OF NEUROLOGY 1494-95 (6th ed.) (last visited June 5, 2008)).

[3] The ALJ found that Plaintiff's alleged depression was not a severe impairment.  (T. at 21.)

V.     DISCUSSION

A.     **Treating Physician Rule and RFC**

Plaintiff argues that the ALJ erred by failing to afford controlling weight to the opinion of her treating physician, Dr. Angelo Porcari. (Dkt. No. 8 at 11-15.) Plaintiff further argues that, due to this error, the ALJ's RFC determination is not supported by substantial evidence. (Dkt. No. 8 at 15-17.)

Dr. Porcari treated Plaintiff for various ailments from March 8, 1999, through January 30, 2005. (T. at 164-91, 250-78.) On January 9, 2004, he noted that he had seen Plaintiff "on several occasions because of joints and muscle pain" and referred Plaintiff to a rheumatologist, Dr. Mary Abdulky, to determine whether Plaintiff's symptoms were "secondary to fibromyalgia or some other inflammatory process." (T. at 260.)

Dr. Abdulky examined Plaintiff on January 13, 2004. She found "multiple tender fibrositic points over the neck, upper and lower back, chest, posterior greater trochanters, and elbows" and diagnosed Plaintiff with fibromyalgia. (T. at 163.) Dr. Abdulky recommended low impact aerobic exercises and gentle stretching and prescribed Skelaxin[4]. (T. at 163.)

Thereafter, Dr. Porcari consistently assessed Plaintiff as suffering from fibromyalgia. (T. at 165, 254-59.) In his first physical examination of Plaintiff after she saw Dr. Abdulky, Dr. Porcari noted that Plaintiff had "abnormal ... tenderness of the suprapubic area." (T. at 254.) His physical examination notes of Plaintiff's subsequent visits state: "Cardiac exam revealed regular S1, S2 no gallop, no murmurs. Lungs revealed good air entry, clear to percussion, auscultation.

---

[4]     Skelaxin is "prescribed for the relief of painful musculoskeletal conditions." The PDR Pocket Guide to Prescription Drugs 1318 (Bette LaGow, ed., 7th ed. 2005.)

Abdomen revealed normal bowel sounds, soft, non-tender, no organomegaly appreciated. Extremity exam revealed no clubbing, cyanosis or edema.  Peripheral pulses intact." (T. at 255-259.)  At various times after diagnosing Plaintiff with fibromaylgia, Dr. Porcari prescribed Skelaxin, Darvocet[5], Flexeril[6], and Elavil[7]. (T. at 165, 255).  The office notes do not reflect that Dr. Porcari ever recommended that Plaintiff limit her activities.

On February 18, 2005, Dr. Porcari completed a fibromyalgia medical source statement. (T. at 281-85.)  Dr. Porcari diagnosed Plaintiff with anxiety, depression, gastroesophageal reflux disease ("GERD"), IBS, and fibromyalgia, which according to him met the criteria described by the American College of Rheumatology.  (T. at 281.)  He stated that Plaintiff's pain would constantly interfere with her attention and concentration, she was incapable of even "low stress" jobs, and the side effects of her medication would impair her judgment.  (T. at 282-83.)  Dr. Porcari opined that Plaintiff was not able to walk even one block and that she could sit for only thirty minutes at a time, stand for one hour at a time, sit, stand, and walk for less than two hours total in an eight-hour workday, and would need to shift positions at will from sitting, standing, and walking.  (T. at 283.)  He also stated that Plaintiff would have to take unscheduled breaks every hour to lie down, she could never lift and carry less than ten pounds or climb ladders, she could rarely twist, stoop, crouch/squat, climb stairs, look down or up, turn her head, or hold her

---

[5]  Darvocet is "prescribed for the relief of mild to moderate pain."  The PDR Pocket Guide to Prescription Drugs 385 (Bette LaGow, ed., 7th ed. 2005.)

[6]  Flexeril "provides relief of muscular stiffness and pain."  The PDR Pocket Guide to Prescription Drugs 577 (Bette LaGow, ed., 7th ed. 2005.)

[7]  Elavil is an anti-depressant that is also prescribed to control chronic pain.  The PDR Pocket Guide to Prescription Drugs 499 (Bette LaGow, ed., 7th ed. 2005.)

head in a static position, she could grasp and do fine manipulation for only ten percent of the time in an eight-hour day, and she could only reach for five percent of the time in an eight-hour day. (T. 284.) Dr. Porcari concluded that Plaintiff would be absent more than four days per month. (T. at 285.)

Although the ALJ found that Plaintiff suffers from severe fibromyalgia, he rejected Dr. Porcari's assessment of Plaintiff's ability to do work-related tasks. (T. at 21.) In doing so, he noted that:

> The claimant's treating physician, Dr. Porcari, apparently relied quite heavily on the subjective report of symptoms and limitations provided by the claimant, and seemed to uncritically accept as true most, if not all, of what the claimant reported. Yet, as explained elsewhere in this decision, there exist good reasons for questioning the reliability of the claimant's subjective complaints. The few laboratory tests and x-rays that have been admitted into evidence have been for the most part, normal.

(T. at 21.)

Instead, the ALJ adopted in large part the conclusions of a non-examining agency disability analyst and concluded that Plaintiff has the RFC to lift ten pounds frequently and twenty pounds occasionally, can occasionally climb, balance, bend, stoop, kneel, crouch, crawl, and grip, and has moderate limitations on her ability to maintain pace. (T. at 25.) In doing so, the ALJ erred.

The medical opinions of a treating physician regarding "the nature and severity" of a claimant's conditions are given "controlling weight" as long as they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and are not inconsistent with other substantial evidence contained in the record. 20 C.F.R. § 404.1527(d)(2) (2007).

"An ALJ who refuses to give controlling weight to the medical opinion of a treating physician must consider various 'factors' to determine how much weight to give to the opinion." *Halloran v. Barnhart,* 362 F.3d 28, 32 (2d Cir. 2004). These factors include: (1) the length of the treatment relationship and frequency of examinations; (2) the nature and extent of treatment relationship; (3) the medical evidence in support of the opinion; (4) the consistency of the opinion with the record as a whole; (5) whether the opinion is from a specialist; and (6) any other factors that tend to support or contradict the opinion. 20 C.F.R. § 404.1527(d)(2) (2007).

Here, the ALJ rejected Dr. Porcari's opinion because it "apparently relied quite heavily on the subjective report of symptoms and limitations provided by the claimant." (T. at 21.) Dr. Porcari's reliance on Plaintiff's subjective complaints is not a valid basis for rejecting his opinion. As the Second Circuit has noted, "a patient's report of complaints, or history, is an essential diagnostic tool." *Green-Younger v. Barnhart*, 335 F.3d 99, 107 (2d Cir. 2003). This is particularly true where a patient suffers from fibromyalgia. As the Second Circuit has noted, "fibromyalgia is a disabling impairment" that "eludes . . . measurement" through objective medical evidence because there are "no objective tests which can conclusively confirm the disease." *Green-Younger* , 335 F.3d at 108 (citations omitted); *see also Lisa v. Sec'y of Dep't of Health and Human Servs.*, 940 F.2d 40, 44-45 (2d Cir. 1991). As the Second Circuit has noted:

> [i]n stark contrast to the unremitting pain of which fibrositis patients complain, physical examinations will usually yield normal results-a full range of motion, no joint swelling, as well as normal muscle strength and neurological reactions. There are no objective tests which can conclusively confirm the disease; rather, it is a process of diagnosis by exclusion and testing of certain "focal tender points" on the body for acute tenderness which is characteristic in fibrositis patients.

10

*Lisa v. Sec'y of Dep't of Health and Human Servs.*, 940 F.2d at 45 (citation omitted); *see also The Merck Manual* 481 (17th ed. 1999) (noting that fibromyalgia is recognized by certain "typical" symptoms and through exclusion of other diseases).

Moreover, to the extent that the ALJ believed that Dr. Porcari's opinion was not based on medically acceptable clinical and laboratory diagnostic techniques, he was under a duty to recontact Dr. Porcari for more information. 20 C.F.R. § 404.1512(e) (2007). This duty existed even though Plaintiff was represented by counsel. *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996).

Dr. Porcari's opinion is not inconsistent with substantial evidence in the record. The only evidence in the record that contradicts Dr. Porcari's opinion is the RFC assessment by a non-examining agency analyst and a report from consultative examiner Dr. Kalyani Ganesh. The agency analyst found that Plaintiff could lift 10 pounds frequently and 20 pounds occasionally and had no other limitations. (T. at 204-209.) Dr. Ganesh found that Plaintiff did not have any limitations on sitting, standing, walking, or the use of her arms. (T. at 194.) Neither of these opinions constitutes "substantial evidence."

The agency analyst's opinion is not "substantial evidence." ALJs may consider "medical opinions." 20 C.F.R. § 404.1512(b)(2) (2007). "Medical opinions are statements from physicians ... or other acceptable medical sources that reflect judgments about the nature and severity of (a plaintiff's) impairments." 20 C.F.R. § 404.1527(a)(2)(2007). Here, because there is no information about the analyst's professional qualifications in the file, the Court cannot determine whether the assessment was completed by a physician, an acceptable medical source, or neither. It is thus not clear on this record whether or not the analyst's assessment qualifies as a

11

medical opinion.  Even if the assessment does qualify as a medical opinion, the opinion of a non-examining physician is entitled to little weight.  20 C.F.R. § 416.927(d)(1) (2007).

Dr. Ganesh's opinion does not constitute substantial evidence.  "In making a substantial evidence evaluation, a consulting physician's opinion or report should be given limited weight. *Simmons, II v. United States Railroad Retirement Bd.*, 982 F. 2d 49, 55 (2d Cir.1992); *Cruz v. Sullivan*, 912 F.2d 8, 13 (2d Cir. 1990) (citations omitted) (*quoting Torres v. Bowen*, 700 F. Supp. 1306, 1312 (S.D.N.Y.1988)); *Thompson v. Apfel*, 97 Civ. 7697, 1998 WL 720676, *4 (S.D.N.Y. Oct. 9, 1998); *Hall v. Chater*, 94 Civ. 1401, 1996 WL 118544, *3 (E.D.N.Y. March 8, 1996); *Hill v. Chater*, 1997 WL 1047444, *4 (E.D.N.Y. July 7, 1997); *see also Bluvband v. Heckler*, 730 F.2d 886, 894 (2d Cir.1984) (ALJ should not baldly accept consulting physicians' evaluations which are disputed and based on one examination of claimant); *Smith v. Sullivan*, 776 F. Supp. 107, 111 (E.D.N.Y.1991) (finding that the conclusory reports of consulting physicians who examined claimant only once did not constitute substantial evidence). The reasons for according little weight to consultative examinations are that they are often brief, are generally performed without benefit or review of the claimant's medical history and, at best, only give a glimpse of the claimant on a single day. *Cruz,* 912 F.2d at 13. Often, consultative reports, without stating reasons, ignore or give only passing consideration to subjective symptoms. *Id*."  *Crespo v. Apfel*, No. 97 CIV 4777 MGC, 1999 WL 144483 (S.D.N.Y. March 17, 1999).

Because Dr. Porcari's opinion is not inconsistent with other substantial evidence contained in the record and because the ALJ did not recontact Dr. Porcari to determine whether the opinion was "well-supported by medically acceptable clinical and laboratory diagnostic techniques," the ALJ erred by failing to give controlling weight to Dr. Porcari's opinion.  The

ALJ's RFC determination hinged on his erroneous rejection of Dr. Porcari's opinion. Accordingly, remand for further proceedings is appropriate.

### B. Credibility

Plaintiff argues that the ALJ's credibility finding was not supported by substantial evidence and did not comply with the applicable Social Security rulings and regulations. (Dkt. No. 8 at 17-18.)

The ALJ found that Plaintiff's "allegations regarding her limitations are not totally credible, for the reasons set forth in the body of the decision." (T. at 25.) However, the body of the ALJ's decision includes very little discussion of Plaintiff's credibility. As discussed above, the ALJ dismissed Dr. Porcari's opinion because it was based on Plaintiff's own reports of her pain and "as explained elsewhere in this decision, there exist good reasons for questioning the reliability of the claimant's subjective complaints." (T. at 21.) The only discussion of Plaintiff's credibility "elsewhere in the opinion" are the ALJ's statements that (1) "[t]here have been no musculoskeletal findings that would significantly reduce the claimant's ability to lift, carry, push, pull, stand or walk from the time that she held her last job as a home health aide" (T. at 22); and (2) Plaintiff "has not provided convincing details regarding factors which precipitate the allegedly disabling symptoms, claiming that the symptoms are present 'constantly,' or all of the time." (T. at 21.)

"An [ALJ] may properly reject [subjective complaints] after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons 'with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence.'" *Lewis v. Apfel*, 62 F. Supp. 2d 648, 651

13

(N.D.N.Y. 1999) (quoting *Gallardo v. Apfel*, Civ. No. 96-9435, 1999 WL 185253, at *5 (S.D.N.Y. Mar. 25, 1999)).  To satisfy the substantial evidence rule, the ALJ's credibility assessment must be based on a two-step analysis of pertinent evidence in the record.  20 C.F.R. § 404.1529 (2007); *see also Foster v. Callahan*, Civ. No. 96-1858, 1998 WL 106231, at *5 (N.D.N.Y. Mar. 3, 1998) and SSR 96-7p.  First, the ALJ must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce the claimant's pain or other symptoms.  SSR 96-7p.  This finding does not involve a determination as to the intensity, persistence, or functionally limiting effects of the claimant's pain or other symptoms.  *Id.*  If no impairment is found that could reasonably be expected to produce pain, the claimant's pain cannot be found to affect the claimant's ability to do basic work activities.  An individual's statements about his pain are not enough by themselves to establish the existence of a physical or mental impairment, or to establish that the individual is disabled.  *Id.*

However, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the claimant's pain or other symptoms has been established, the second step of the analysis is for the ALJ to evaluate the intensity, persistence, and limiting effects of the pain or symptoms to determine the extent to which they limit the claimant's ability to perform basic work activities.  *Id.* A claimant's symptoms can sometimes suggest a greater level of severity than can be shown by the objective medical evidence alone.  *Id.*  When the objective evidence alone does not substantiate the intensity, persistence, or limiting effects of the claimant's symptoms, the ALJ must assess the credibility of the claimant's subjective complaints by considering the record in light of the following symptom-related factors:  (1) claimant's daily activities; (2) location,

14

duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms.  20 C.F.R. § 404.1529(c)(3) (2007).

An ALJ's evaluation of a plaintiff's credibility is entitled to great deference if it is supported by substantial evidence.  *Murphy v. Barnhart*, Civ. No. 00-9621, 2003 U.S. Dist. LEXIS 6988, at *29-*30 (S.D.N.Y. Jan. 21, 2003) (citing *Bischof v. Apfel*, 65 F. Supp. 2d 140, 147 (E.D.N.Y. 1999) and *Bomeisl v. Apfel*, Civ. No. 96-9718, 1998 U.S. Dist. LEXIS 11595, at *19 (S.D.N.Y. July 30, 1998) ("Furthermore, the ALJ has discretion to evaluate a claimant's credibility . . . and such findings are entitled to deference because the ALJ had the opportunity to observe the claimant's testimony and demeanor at the hearing.")).

Here,  the ALJ found that Plaintiff suffers from fibromyalgia, a condition that could reasonably be expected to produce the claimant's pain or other symptoms.  However, the ALJ found that the objective evidence alone did not substantiate the intensity, persistence, or limiting effects of Plaintiff's symptoms.  The ALJ was thus required to assess the factors listed above with sufficient specificity to enable this Court to decide whether the determination is supported by substantial evidence.

Contrary to Defendant's assertion that the "ALJ's decision discusses these factors in great detail" (Dkt. No. 9 at 14), the ALJ was insufficiently specific.   Regarding Plaintiff's daily activities, the ALJ stated that Plaintiff "drives five days a week, but can only sit for an 1/2 hour before getting stiff ... Her sleeping pattern includes sleeping 6-7 hours at night, and taking 1/2

hour naps twice a day. She does some cooking, cleaning, and laundry, with help." (T. at 18.) The ALJ did not state if or how these daily activities contradict Plaintiff's report of her symptoms. As noted above, the remainder of the ALJ's decision includes very little information regarding his credibility analysis. This Court is therefore unable to determine whether the ALJ's credibility determination is based on substantial evidence. Accordingly, remand for further proceedings is appropriate.

### C.  Vocational Expert Testimony

Plaintiff argues that the vocational expert's testimony does not constitute substantial evidence to support a denial of benefits because it was based on an incomplete hypothetical question. (Dkt. No. 8 at 18-20.)

The ALJ asked the vocational expert what work could be performed by a hypothetical person who could only occasionally bend, stoop, kneel, crouch, crawl, squat, balance, climb, and grip, who should avoid concentrated exposure to hazardous machinery and unprotected heights, and who had a moderate limitation in her ability to keep up pace for extended periods. (T. at 331-332.) The vocational expert testified that such a person could work as a cashier, a counter attendant, an interviewer, a charge account clerk, or a food and beverage order clerk. (T. at 333.) The ALJ relied on this testimony to find that there are a significant number of jobs in the national economy that Plaintiff can perform and that she is not disabled. (T. at 25.) However, as discussed above, the ALJ's RFC determination, upon which he based his hypothetical to the vocational expert, is not based on substantial evidence. Questions posed to a vocational expert must "reflect the full extent of the claimant's capabilities and impairments." *Sanchez v. Barnhart,* 329 F. Supp. 2d 445, 449 (S.D.N.Y. 2004) A hypothetical question that "fails to reflect all of a

claimant's impairments that are supported by the record ...cannot be considered substantial evidence." *Ramirez v. Barnhart*, 372 F.3d 546, 550 (3d Cir. 2004). Accordingly, remand for further proceedings is appropriate.

**WHEREFORE,** it is hereby

**RECOMMENDED**, that this matter be remanded to the Commissioner, pursuant to sentence four of 42 U.S.C. § 405(g),[8] for further proceedings consistent with the above.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Dated: July 28, 2008
　　　　Syracuse, New York

George H. Lowe
United States Magistrate Judge

---

[8] Sentence four reads "[t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).